

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/03/2021

| | | |
|---|---|---|
| IN RE: | § | |
| **PRAGATI VAIDYA** | § | **CASE NO: 18-36401** |
| Debtor | § | |
| | § | **CHAPTER 13** |
| | § | |
| **PRAGATI VAIDYA** | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-3592** |
| | § | |
| **AMIT CHOUDHARY** | § | |
| Defendant | § | |

## <u>MEMORANDUM OPINION</u>

Much like a Jenga tower, bankruptcy cases and the processes governing them are carefully structured for the protection of both debtors and creditors. Such cases are fortified by the Bankruptcy Code's automatic stay, which promotes the orderly distribution of a debtor's assets by placing those assets outside the reach of creditors. When a creditor willfully violates the stay and grabs for a debtor's assets, it disturbs the cautiously ordered process and threatens to send the whole case tumbling. Pragati Vaidya, acting pro se, is before this Court seeking damages for the admittedly willful violation of the automatic stay perpetrated by her ex-husband and creditor, Amit Choudhary. Because Amit Choudhary admits that he willfully, although not intentionally, violated the automatic stay, the only issue before the Court is determining the appropriate amount of damages to be awarded in this case. On January 19, 2021, the Court concluded a two-day trial, took the matter under advisement, and now issues this Memorandum Opinion.

For the reasons stated herein, the Court finds that Plaintiff shall be awarded actual damages in the amount of $2,100 and punitive damages in the amount of $21,000 for a total award of $23,100 for Defendant's willful violation of the automatic stay under 11 U.S.C. § 362(k)(1),

which shall accrue post-judgment interest from the date of the entry of this Court's judgment until paid. The post-judgment interest rate that will be in effect on the date of the entry of the judgment will be .09 percent (0.09%) per annum.[1] Plaintiff's claim for attorney's fees and pre-judgment interest is denied. Plaintiff's claims for recovery of post-petition transfers under 11 U.S.C. §§ 549 and 550 and claim for turnover of property under 11 U.S.C. § 542 were mooted by this Court's order retroactively annulling the automatic stay validating the Rendition and Final Decree of the State District Court and are therefore denied. The Court further finds Defendant in civil contempt of this Court's Stay Modification Order but declines to issue any sanctions against Defendant.

## I.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (G), this proceeding contains core matters.

Furthermore, this Court may only hear a case in which venue is proper.[3] Pursuant to 28 U.S.C. § 1408, a case under title 11 may be commenced where a debtor has been domiciled, resided, or maintained its principal place of business for 180 days immediately preceding debtor's petition date. Venue is proper here because, Pragati Vaidya, resided within the Southern District of Texas for the 180 days immediately preceding her petition date.[4] Venue is also proper pursuant to 28 U.S.C. § 1409(a) because Debtors' bankruptcy case is presently pending in this

[1] *Post-Judgment Interest Rates,* United States District & Bankruptcy Court Southern District of Texas, http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited February 3, 2021).
[2] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[3] 28 U.S.C. § 1408.
[4] Citations to Plaintiff's bankruptcy case, 18-36401, shall take the form "Bankr. ECF No. —." Bankr. ECF No. 1.

Court.

## II.  Constitutional Authority to Enter a Final Order

This Court must evaluate whether it has constitutional authority to enter a judgment in this case. In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[5]  The pending dispute before this Court is a core proceeding pursuant to § 157(b)(2)(A), (E), and (G).  The ruling in *Stern* was limited to the one specific type of core proceeding involved in that dispute, which is not implicated in this case. Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final judgment here.[6]  Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2),[7] this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final judgment in this dispute.  In *Stern,* the debtor filed a counterclaim based *solely* on state law; conversely, this dispute involves the intentional violation of the automatic stay pursuant to 11 U.S.C. § 362(k).  Similar provisions do not exist under state law.

Finally, this Court has constitutional authority to enter a final judgment in this adversary

---

[5] 564 U.S. 462, 503 (2011).

[6] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[7] *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern's* 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . .").

proceeding because both parties have consented to adjudication of this dispute by this Court.[8] Defendant consented on December 19, 2019,[9] and Plaintiff consented on November 23, 2020.[10] Thus, this Court wields the constitutional authority to enter a final judgment here.

### III.   Findings of Fact

#### A.   Background History

Pragati Vaidya ("*Plaintiff*") originally filed a chapter 11 bankruptcy on November 13, 2018,[11] while the divorce case between her and her ex-husband, Amit Choudhary ("*Defendant*"), was still pending in the 311th Judicial District Court, Harris County Texas ("*State District Court*").[12]  Plaintiff's bankruptcy case was later converted to a chapter 13 case.[13]  Pursuant to the final divorce decree ("*Final Decree*") pronounced and rendered on November 14, 2018 ("*Rendition*") but not signed until December 19, 2018,[14] the property located at 5531 Pine Street #S, Houston, Texas 77081 ("*Property*") was awarded to Defendant subject to Plaintiff's option to retain the Property.[15]  The Final Decree stipulated that if Plaintiff paid Defendant the total amount of $99,000 no later than seven days before the Final Decree was signed, the Property would be awarded to Plaintiff.[16]  It is undisputed that Plaintiff did not pay Defendant the $99,000 as ordered.[17]  At the time the Final Decree was pronounced and rendered, the automatic stay was

---

[8] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[9] ECF No 38.
[10] Min. Entry November 23, 2020.
[11] Bankr. ECF No. 1.
[12] Defendant's Trial Exhibit D3, at Bates 13.  In the Matter of the Marriage of Amit Choudhary and Pragati Vaidya, Cause No. 2015-69153.
[13] Bankr. ECF No. 35.
[14] Defendant's Trial Exhibit D3, at Bates 40.
[15] *Id.* at Bates 35.
[16] *Id.*
[17] January 19, 2021 Trial 9:29:45–9:32:20; 10:16:00–10:17:18, 10:23:01–10:23:52, 10:24:15–10:25:50.  Defendant believed Plaintiff agreed to turn over the Property after he filed a Petition for Enforcement of Property Division because she could not pay the $99,000 as ordered in the Final Decree or through her chapter 13 plan.  Plaintiff, conversely, believed that by listing Defendant as a creditor in her bankruptcy schedules in the amount of $99,000, she

already in effect.[18]

On December 12, 2018, Defendant filed an expedited motion to modify the automatic stay[19] and on December 18, 2018, this Court entered an order modifying the stay ("*Stay Modification Order*"), permitting the State District Court to enter final orders "respecting the division of community property."[20]   The Stay Modification Order, however, required that "orders pertain[ing] to property that has not been determined to be exempt property under the Bankruptcy Code . . . may not be enforced except as further ordered by this Court."[21]   It is undisputed that the Property  was property of the Bankruptcy Estate.[22]

On January 18, 2019, Plaintiff filed the self-styled "Respondent's Motion for New Trial, Motion for Rehearing and Motion to Set Aside or Modify Final Decree of Divorce Signed De-

---

would be able to keep the Property and pay Defendant the amount owed on his claim, as adjudged by the bankruptcy court, through her chapter 13 plan.  Irrespective of these beliefs, it is undisputed that the $99,000 was not paid within the period specified in the Final Decree.

[18] Bankr. ECF No. 1.

[19] Bankr. ECF No. 23.

[20] Bankr. ECF No. 33.

[21] *Id.*

[22] On December 11, 2018, Plaintiff filed a Schedule C in her chapter 11 case claiming only one exemption described as "Primary Homestead Residence" in the amount of $98,000.  Plaintiff attached a record from the Harris County Appraisal District detailing the Property.  Bankr. ECF No. 19.  Thereafter, on December 20, 2018, Plaintiff's chapter 11 case was converted to a chapter 13 case.  Bankr. ECF No. 35.  Pursuant to this Court's order converting the case, Plaintiff filed new schedules, listing "Primary Homestead" in the amount of $98,000 as exempt in Schedule C, cross-referencing section 1.1 of Schedule A/B, which described the Property.  Bankr. ECF No. 43.  The meeting of creditors was scheduled for February 6, 2019, and the deadline to object to exemptions was scheduled for 30 days after the conclusion of the meeting of creditors.  Bankr. ECF No. 52.  Before that meeting occurred, Plaintiff filed a plan, which provided for, inter alia, payment directly from Plaintiff of $200 a month to Chase Mortgage on its claim in the amount of $300,000, secured by collateral described as "$98,000".  The Court notes that this is the same amount Plaintiff listed as exempt for the "Primary Homestead" in Schedule C.  Bankr. ECF No. 54.  That plan was amended to, inter alia, designate the trustee as the party that would distribute the $200 plan payment to Chase Mortgage.  Bankr. ECF No. 59.  The chapter 13 trustee recommend that the plan not be confirmed and filed a motion to dismiss the case.  Bankr. ECF Nos. 62, 63.  A hearing on dismissal was scheduled for March 26, 2019.  Bankr. ECF No. 63.  On February 20, 2019, Trustee made an entry on the docket denoting the meeting of creditors was held and concluded.  Bankr. ECF No. 62.  However, the meeting was reopened and reset to May 15, 2019, after this Court conducted a hearing on March 26, 2019, resetting the confirmation hearing to June 11, 2019, because Trustee was to conduct a new examination after Plaintiff filed amended plan documents.  Bankr. ECF No. 70 and Min. Entry.  On April 29, 2019, Plaintiff filed an amended Schedule A/B listing the Property and noting "Transferred to ex-spouse in divorce," and an amended Schedule C no longer claiming the Property as exempt.  Bankr. ECF No. 78.  Plaintiff also filed an amended plan, indicating that the claims secured by the Property, to include $99,000 to Defendant, "will be satisfied by transfer of title" to the Property from Plaintiff to Defendant.  Bankr. ECF No. 79.  The meeting of creditors was held and concluded May 22, 2019.  Bankr. ECF No. 87.  Because all claimed exemptions had not yet become final, the Property, at all times relevant to this proceeding, was property of the Bankruptcy Estate pursuant to § 541.

cember 19, 2018" ("*Motion for New Trial*"), in the State District Court.[23]   Five days later, Defendant filed a "Petition for Enforcement of Property Division" ("*Motion to Enforce*") in the State District Court to enforce the Final Decree.[24]   Defendant admits that the intent of the Motion to Enforce was to force Plaintiff to deed the Property to Defendant.[25]   Plaintiff thereafter deeded the Property to Defendant.[26]   On May 8, 2019, Defendant sold the Property for $379,000.[27]   This sale was in direct violation of the automatic stay and this Court's Stay Modification Order.[28]   After closing costs and fees were paid, Defendant netted $44,970.94.[29]   Defendant's failure to seek pre-clearance prevented this Court from entering final orders regarding the Final Decree as it pertained to the division of non-exempt community assets.

On August 20, 2019, Plaintiff filed a complaint in this Court seeking: (1) to avoid the transfer pursuant to 11 U.S.C. § 549 and obtain a money judgment for any avoided transfer; (2) to recover actual damages, attorney's fees, and punitive damages for willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1); (3) turnover of all amounts owed and all proceeds, profits, and interest derived therefrom pursuant to 11 U.S.C. § 542; (4) a finding by this Court that Defendant was in civil contempt by violating the Court's Stay Modification Order; and (5) pre- and post-judgment interest on the value of the transfer plus reasonable attorney's fees.[30]   In her initial disclosures pursuant to Federal Rule of Civil Procedure 26(a),[31] however, Plaintiff only asked for pre- and post-judgment interest on the value of the transfer, reasonable

---

[23] Defendant's Trial Exhibit D4, at Bates 43.
[24] ECF Nos. 2, 41.
[25] ECF No. 41.
[26] ECF Nos. 2, 41.  It is undisputed that Plaintiff deeded the Property to Defendant.
[27] Plaintiff's Trial Exhibit P36, at Bates 198–244.
[28] Bankr. ECF No. 33.
[29] Plaintiff's Trial Exhibit P36, at Bates 198–244; ECF No. 41.
[30] ECF No. 2.
[31] Applicable here pursuant to FED. R. BANKR. P. 7026.

attorney's fees, and punitive damages pursuant to § 362(k)(1).[32]

On November 2, 2020, this Court, after notice and a hearing, granted Defendant's motion to annul the automatic stay as to the Rendition, retroactive to the filing date of Plaintiff's bankruptcy.[33]   Therefore, the marital property has been deemed divided by the entry of the Rendition and Final Decree of Divorce in the State District Court.  That annulment also mooted Plaintiff's claims for turnover of the Property pursuant to § 542, and her claim for recovery of post-petition transfers pursuant to §§ 549 and 550.

Defendant cedes that, by definition, his conduct amounted to a willful violation of the automatic stay. [34]   Based on Defendant's concession, this Court's Order Annulling the Automatic Stay,[35] which mooted certain of Plaintiff's claims as stated above, and arguments made on the record, the issues for trial were limited to (1) what damages, if any, Plaintiff suffered from Defendant's admitted violation of the automatic stay and (2) whether Defendant should be held in civil contempt of this Court's orders.[36]

## B.  Witness Testimony and Credibility

While two other witnesses were called,[37] the facts of this case are heavily dependent on testimony elicited from Plaintiff and Defendant.  The Court summarizes the testimony as follows:

Defendant testified that:

---

[32] ECF No. 43.

[33] Bankr. ECF 142.

[34] ECF No. 92 (citing *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 302 (5th Cir. 2005) ("A willful violation does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.  Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.")).

[35] Bankr. ECF No. 142.

[36] Min. Entry November 23, 2020.

[37] On the first day of trial, December 15, 2020, Plaintiff called Defendant's former counsel, Liza Green and Laura Dale, as witnesses.  However, that testimony related to the willful violation of the stay, which Defendant already admitted, and not to Plaintiff's damages.

1. He willfully, although not intentionally violated this Court's Stay Modification Order.[38]

2. When Plaintiff filed her Motion for New Trial in the State District Court, Defendant responded by filing his Petition for Enforcement of Property Division because he believed Plaintiff was attempting to relitigate the division of property expressed in the Final Decree. He felt that he needed to take action because Plaintiff "re-entered the fray" in the State District Court. He failed to consider this Court's pre-clearance requirement.[39]

3. There was never a hearing on the Petition because in the lobby of the State District Court, Defendant's family law attorney and Plaintiff's family law attorney agreed that Plaintiff would deed the Property to Defendant because, as Defendant understood, she could not pay the $99,000 as ordered by the Final Decree or account for it in her bankruptcy plan.[40]

4. He understood that Plaintiff was going to inform this Court that she was deeding the Property to Defendant. He believed that the Court was sufficiently informed of the turnover to him when Plaintiff filed a Motion for Continuance[41] in her bankruptcy case indicating that she had given the Property to Defendant.[42]

5. Those understandings were the source of Defendant's confusion regarding the need to seek pre-clearance from this Court.[43]

6. He would not have sold the Property if it had not been voluntarily tendered.[44]

7. He is currently employed and has been employed consistently. He is making only 60% of the salary he was making before the COVID-19 pandemic. He may or may not be furloughed beginning in February depending on whether his employer has work for him.[45]

8. He has accrued upwards of $30,000 in attorneys' fees associated with litigation costs.[46]

---

[38] January 19, 2021 Trial at 9:23:40–9:24:43.
[39] *Id.* at 9:25:10–9:29:40.
[40] *Id.* at 9:28:15–9:30:43.
[41] Bankr. ECF No. 64.
[42] January 19, 2021 Trial at 9:33:50–9:35:25.
[43] *Id.* at 9:33:50–9:36:00.
[44] *Id.* at 9:36:00–9:36:25.
[45] *Id.* at 9:41:54–9:43:06, 10:09:45–10:11:00.
[46] *Id.* at 9:39:15–9:40:00. Defendant's testimony was unclear on this point. Defendant's counsel asked how much Defendant has paid to him in attorney's fees. Defendant testified that in the last 60 days he has not paid anything, but before that he paid $22,000 to Laura Dale and $17,000 to Liza Green. ECF No. 29 reflects that Dale and Green were Defendant's attorneys in the State District Court and represented him briefly in this case. They were later sub-

Defendant blames his failure to seek pre-clearance from this Court on his mistaken belief that satisfying the terms of the Stay Modification Order would be completed by Plaintiff, but Defendant violated the stay by filing the Motion to Enforce in the State District Court, before he was under any impression that Plaintiff would inform this Court of the transfer.  It was Defendant's motion[47] in Plaintiff's bankruptcy case that resulted in this Court's Stay Modification Order and Defendant was represented by counsel at the hearing on that motion.[48]  Accordingly, this Court finds Defendant's credibility questionable. Defendant's testimony was self-serving, and unpersuasive and thus, this Court gives little weight to his testimony.

Plaintiff testified that:

1. Although she did not have a computation for the $99,000 in equity she claimed to have in the Property, this was the amount of value disclosed to the State District Court and in her bankruptcy schedules.[49]

2. She understood that in her bankruptcy plan she was supposed to list all her secured creditors, one of which was Defendant.[50]  She understood that this Court would decide how much she owed her creditors on their claims and would come up with a payment plan in bankruptcy to pay them those amounts.[51]  She believed that by listing Defendant with a claim of $99,000 for the Property she would be able to pay that amount, or whatever this Court adjudged her to owe, with a payment plan.[52]

3. She felt pressured to deed the Property to Defendant, even though she thought it was protected by the bankruptcy proceedings, because her family law attorney told her she would be in "jeopardy" if she did not sign the deed.  Plaintiff signed the deed in the lobby of the State District Court and later informed her bankruptcy attorney.[53]

---

stituted by Charles (Chuck) Newton.  It is unclear how much of the alleged $39,000 in attorneys' fees is attributable to this case.

[47] Bankr. ECF No. 23.

[48] Min. Entry Dec. 18, 2018.

[49] January 19, 2021 Trial at 10:24:15–10:25:50, 10:55:10–11:00:27.

[50] *Id.* at 10:16:00–10:17:18.

[51] *Id.* at 10:23:01–10:23:52.

[52] *Id.* at 10:24:15–10:25:00.

[53] *Id.* at 10:38:00–10:39:00.  Plaintiff's attorney withdrew as counsel on July 13, 2020.  ECF No. 67.

4. On February 28, 2019, Plaintiff was told to vacate the Property by Defendant's attorney or she would be in contempt.  She was given 24-48 hours to vacate.[54]

5. She did not have any money to pay people to help her move so she gave them some of her furniture instead.[55]

6. A non-profit organization, Daya, Inc., helped her find housing.  Because the organization helped, she cannot compute her moving costs.  She knows the organization spent more than $10,000 to $15,000.[56]

7. She was without housing for 2-3 days while she looked for an apartment.  When she finally got an apartment, it was in very poor condition and infested with rats and roaches.[57]

8. She suffered severe emotional trauma and tremendous stress.[58]  This stress was due to the inability to see her children because she couldn't afford the supervised visits required by the Final Decree and being forced from the Property.[59]  She cannot compute the damages she suffered from her emotional trauma.[60]

9. She suffered a brachial plexus injury.  She experienced nerve damage in her neck, throat, and arm that prevented her from performing daily tasks such as cooking, cleaning, and driving, causing her to miss work for three weeks.[61]  She did not have insurance at the time because she had recently started her job and she did not have any money to pay for doctor visits or treatments.[62]  Her employer connected her with doctors that provided her with steroid injections for free.[63]  She informed her bankruptcy counsel of her physical pain at the time it was occurring.[64]

10. The bankruptcy attorney she had at the beginning of the case should have submitted her damages computations at the times of the initial disclosures.  In representing herself pro se, she lacks knowledge of the legal system and doesn't know when documents are supposed to be filed.[65]

---

[54] *Id.* at 10:19:34–10:20:10.
[55] *Id.* at 10:45:14–10:45:38.
[56] *Id.* at 10:35:22–10:35:50.
[57] *Id.* at 10:39:05–10:39:40.
[58] *Id.* at 10:28:51–10:29:30, 10:33:10–10:35:45, 10:40:13–10:40:45, 10:44:35–10:45:43, 10:46:15–10:47:00.
[59] *Id.* at 10:28:51–10:29:30, 10:44:35–10:45:43.
[60] *Id.* at 10:40:13–10:40:45.
[61] *Id.* at 10:26:23–10:27:00; Bankr. ECF No. 64.
[62] January 19, 2021 Trial at 10:28:35–10:28:50.
[63] *Id.* at 10:26:20–10:28:06.
[64] *Id.* at 10:28:15–10:28:30.
[65] *Id.* at 10:50:40–10:51:30.

11. She did not know the case would reach this point and didn't know that she would need to have documents reflecting her damages to submit to this Court.[66]

This Court finds Plaintiff's testimony to be genuine and persuasive and gives substantial weight to her testimony.

## IV.   Conclusions of Law

### A.  Plaintiff's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)

At trial, Plaintiff attempted to prove damages for lost equity, emotional and physical suffering, and sudden, unexpected eviction from the Property all resulting from Defendant's willful violation of the Stay Modification Order.   In closing remarks, Defendant's counsel argued that Plaintiff failed to provide documents pursuant to Federal Rule of Civil Procedure 26(a) supporting the damages requested in her initial disclosures and did not seek monetary relief for the damages she attempted to prove at trial nor for civil contempt; thus, she is not entitled to any damages.[67]

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to "provide to the other parties a computation of each category of damages claimed by the disclosing party" and "evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of the injuries suffered."   A party is required to timely supplement or correct a disclosure that is incomplete or incorrect in some material respect, if the information has not otherwise been made known to the other parties during the discovery process or in writing.[68]   Failure to supplement a Rule 26(a) disclosure bars a party from presenting the information not provided at trial, "unless the failure was substantially justified or harmless."[69]   Pursuant to Rule 37(c), then, Plaintiff may only rely on documents supporting the damages disclosed in her initial disclosure

---

[66] *Id.* at 10:28:30–10:28:50.
[67] *Id.* at 11:16:00–11:18:45; ECF No. 92.
[68] Fed. R. Civ. P. 26(e).
[69] *Id.* 37(c).

unless her failure to provide that information or supplement her disclosure was "substantially justified" or "harmless." The burden of proving a failure to disclose under Rule 26(a) was harmless is on the non-complying party.[70]

To determine whether a failure was substantially justified or harmless, courts in the Fifth Circuit weigh four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.[71] Plaintiff's evidence proving damages was scant. The only usable, concrete testimony evincing actual damages is the $600 to $700 a week in lost wages resulting from Plaintiff's brachial plexus injury. Plaintiff attributed her failure to produce documentary evidence to her lack of legal knowledge in representing herself pro se[72] and that some of her costs were covered by charitable actions.[73]

As Plaintiff's only calculable evidence as to actual damages, it is of great importance. The prejudice to Defendant, while not zero, is reduced because at the time of her injury, Plaintiff filed a Motion for Continuance, stating that she was suffering from a brachial plexus injury that caused her to be out of work for three weeks.[74] A doctor's note was appended to that motion.[75] Defendant provided testimony identifying this document as one that contributed to his alleged confusion regarding his duties pursuant to the Stay Modification Order.[76] Defendant had knowledge of the contents therein. It was foreseeable that Plaintiff may claim damages for her physical pain, which occurred at the same time as Defendant's ongoing stay violation. And while knowledge of that document does not satisfy Plaintiff's duties under Rule 26(a), it does

---

[70] *Aronstein v. High Std. Mfg. Co. (In re High Std. Mfg. Co.)*, 2017 Bankr. LEXIS 2388, *10 (Bankr. S.D. Tex. Aug. 24, 2017).
[71] *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).
[72] January 19, 2021 Trial at 10:50:40–10:51:30, 10:28:30–10:28:50.
[73] *Id.* at 10:26:20–10:28:06, 10:35:22–10:35:50.
[74] Bankr. ECF No. 64.
[75] *Id.*
[76] January 19, 2021 Trial at 9:34:35–9:35:25.

reduce the prejudice to Defendant of Plaintiff presenting evidence of her lost wages at trial. Moreover, while pro se representation does not excuse one from following the applicable rules and procedures, this Court does afford some deference to pro se parties, particularly in this case where Plaintiff had an attorney at the time initial disclosures were filed and later became a pro se plaintiff.  Accordingly, this Court finds substantial justification to admit the evidence.

## B.  Whether Plaintiff is Entitled to Any Damages

Under 11 U.S.C. § 362(k)(1), willful violations of the automatic stay carry hefty penalties that include actual damages, costs and attorney's fees, and potentially, punitive damages.  Civil contempt can be used to compensate a party who suffered unnecessary injuries or costs because of another party's violation of a court's order.[77]  This Court will consider each in turn.

### 1.  Damages for willful violation of the automatic stay pursuant to § 362(k)

#### a.  Actual Damages

##### i.  Lost equity and moving costs

A plaintiff is entitled to actual damages when a defendant commits a willful violation of the automatic stay.[78]  While mandatory, those damages must still be proven by Plaintiff "with reasonable certainty and may not be speculative or based on conjecture."[79]  Plaintiff argued that she had $99,000 in equity in the Property, which was lost when Defendant violated the stay and sold the Property.[80]  In her chapter 13 plan, Plaintiff provided that transfer of the title to the Property to Defendant would satisfy four claims, including $99,000 to Defendant, secured by the Property.[81]  The planned disposition of the Property aligned with the Final Decree.[82]  In the Final

---

[77] *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009).
[78] 11 U.S.C. § 362(k)(1) (". . . an individual injured by a willful violation of a stay provided by this section *shall* recover actual damages . . . .") (emphasis added).
[79] *Garza v. CMM Enters., LLC (In re Garza)*, 605 B.R. 817, 829 (Bankr. S.D. Tex. 2019).
[80] January 19, 2021 Trial at 10:24:15–10:25:50, 10:55:10–11:00:27.
[81] Bankr. ECF No. 89.
[82] Defendant's Trial Exhibit D3, at Bates 35.

Decree, Defendant was awarded sole ownership of the Property, subject only to Plaintiff's abso-

lute right to pay Defendant $99,000 no later than seven days before the Final Decree was signed

by the State District Court in exchange for sole ownership of the Property.[83]   There is no evi-

dence in the record that Plaintiff paid the $99,000 to Defendant within the required time or oth-

erwise.[84]   Thus, Defendant's sale of the Property did not result in any actual damages to Plaintiff.

Plaintiff did not provide evidence of her costs related to her eviction from the Property

and she cannot recover for what a nonprofit organization paid on her behalf.   Accordingly, no

damages are awarded for Plaintiff's lost equity, if any, or moving costs.

### ii.   Emotional and physical pain and suffering and lost wages

Emotional and physical suffering and lost wages resulting therefrom may constitute actu-

al damages.[85]   To prevail, the injured party must set forth specific information concerning dam-

ages; generalized assertions will not suffice.[86]   Courts have awarded damages where the plaintiff

shows specific injury and proves that the injury was caused by the automatic stay violation.[87]

Conversely, where there is "at most a tenuous, correlative relationship between the party's emo-

tional distress and the violation," courts generally will not award damages.[88]   While the Fifth

Circuit has not yet decided whether a showing of physical manifestations of emotional injury is

required before emotional damages may be awarded, courts are wary of awarding emotional

---

[83] *Id.*

[84] January 19, 2021 Trial 9:29:45–9:30:43, 10:16:00–10:17:18, 10:23:01–10:23:52, 10:24:15–10:25:00.   Plaintiff's testimony was that she thought the $99,000 owed to Defendant would be provided for in plan payments.

[85] *See, e.g., James Bradley Collier v. Paul Hill (In re Collier)*, 410 B.R. 464, 477 (Bankr. E.D. Tex. 2009) (finding that plaintiff was entitled to emotional damages because the nature and extent of the party's emotional damages were proved with the requisite specificity); *In re Gervin*, 337 B.R. 854, 860 (Bankr. W.D. Tex. 2005) (finding that plaintiff was entitled to emotional damages where a reasonable relationship was demonstrated between the violation of the discharge injunction and plaintiff's emotional injuries); *In re Garza*, 605 B.R. 829–30 (finding that plaintiff could recover emotional damages, but had not proven that her suffering was caused by the automatic stay violation); *Gates v. RAC Acceptance Tex., LLC (In re Gates)*, 621 B.R. 129, 138 (Bankr. W.D. Tex. 2020) (finding that plaintiff was not entitled to damages for her emotional and physical pain because she did not meet the specificity required to recover).

[86] *In re Garza*, 605 B.R. at 829.

[87] *Id.*

[88] *Id.* at 830 (citations omitted).

damages because they are "easier to manufacture than other types of damages."[89]

Plaintiff's testimony, summarized in part III above, illustrates that Plaintiff's trauma is attributable to many causes—the divorce, custody and visitation of her children, and Defendant's violation of the automatic stay. Because those events occurred simultaneously, there is enough evidence in the record to find that Plaintiff's emotional trauma was a result, in no minor part, of Defendant's violation of the Stay Modification Order. It would be illogical to say that Plaintiff's harm is 100% attributable to her familial struggles and 0% to forcible removal from her home while embroiled in both a divorce proceeding and a bankruptcy case; two major events that are themselves traumatic, life altering events. The automatic stay was Plaintiff's reprieve. It was to maintain the status quo until this Court entered its final orders regarding the division of estate assets. But even that security blanket was heartlessly ripped from Plaintiff when she was ordered to vacate her home all because Defendant intentionally chose to disobey the Stay Modification Order, by filing the Motion to Enforce in the State District Court, taking possession of the home, selling it, and absconding with the proceeds for his own benefit.

Plaintiff's brachial plexus injury that caused her to miss three weeks of work was, in part, a physical manifestation of that trauma. Because Plaintiff testified that she was making $600 to $700 a week, this Court awards Plaintiff $2,100 in lost wages caused by her injury, resulting from Defendant's violation of the Stay Modification Order.[90]

### b.  Attorney's Fees

Pursuant § 362(k)(1), a court may award costs and attorney's fees for willful violations of the automatic stay. However, it is the general rule in the Fifth Circuit "not to award statutorily

---

[89] *Young v. Repine (In re Repine)*, 536 F.3d 512, 521, 522 n.9 (5th Cir. 2008).
[90] This finding does not indicate that physical manifestations of emotional injury are necessary before recovery under § 362(k) in this Court. Because there was a physical manifestation in this case, the Court need not decide that issue.

mandated attorneys' fees to pro se litigants."[91]  Here, Plaintiff represented herself pro se after her attorney withdrew as counsel almost a year into proceedings.[92]  Although Plaintiff requested attorney's fees in her complaint and initial disclosures, Plaintiff provided no evidence of such fees or costs.  Therefore, this Court awards no attorney's fees or costs.

### c.  Punitive Damages

Punitive damages are permitted under § 362(k)(1) in appropriate circumstances.  Punitive damages require egregious conduct, which "is found when a creditor's actions are reckless and in arrogant defiance of the bankruptcy stay."[93]  Such damages "are aimed not at compensation but principally at retribution and deterring harmful conduct."[94]  Because punitive damages act as a deterrent to those who willfully violate the automatic stay, they are appropriate even where actual damages are minimal.[95]

This Court finds that Defendant's testimony and self-serving admissions, detailed in part III above, are evidence of intentional action and arrogant defiance of this Court's Stay Modification Order.  What Defendant's testimony highlights is that he sought and carried out the property division, despite this Court's express order requiring pre-clearance, in retaliation.  Plaintiff had every legal right to file a motion in the State District Court and Defendant's actions in response were not only reckless, they were intentional.  This Court places little stock in Defendant's assertion that he was confused as to who was responsible for notifying this Court regarding the alleged voluntary turnover of the Property by Plaintiff to Defendant; that should have never been an issue because Defendant was required to seek pre-clearance from this Court before even filing

---

[91] *McLean v. Int'l Harvester Co.*, 902 F.2d 372, 375 (5th Cir. 1990) (asserting the general rule, but finding that the pro se litigant may have been entitled to attorneys' fees under an exception, if the district court found that the opposing party forced the pro se litigant to act pro se).

[92] ECF No. 67.

[93] *In re Garza*, 605 B.R. at 830.

[94] *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008).

[95] *In re Garza*, 605 B.R. at 831 (citing *In re Lile*, 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989)).

the Motion to Enforce in State District Court.  That said, this Court finds that punitive damages should be assessed.

In *Haslip*, the Supreme Court found that while the common-law method of determining damages is not per se unconstitutional, "unlimited judicial discretion . . . in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities."[96]  It continued:

> We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case.  We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.[97]

Punitive damages must be reasonable and the process for determining punitive damages must impose "a sufficiently definite and meaningful constraint on the discretion of the factfinder."[98] In *Eichenseer*, the Fifth Circuit held that "[t]he calculation of an appropriate amount of punitive damages is traditionally left to the unique discretion of the factfinder.  Whether judge or jury, the factfinder occupies the best position to determine the amount of a punitive damages award because 'the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case.'"[99]  This Court finds that the circumstances of this case support assessing punitive damages in the amount of $21,000.

A punitive damages award must be reasonable.[100]  In *Gore*, the Supreme Court considered three factors to determine whether a punitive damages award was reasonable: (1) the degree of reprehensibility of defendant's conduct; (2) the ratio of punitive damages awarded to the actu-

---

[96] *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991) (explaining that the common-law approach is where "the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct" and finding it "inappropriate to say that, because punitive damages have been recognized for so long, their imposition is never unconstitutional").
[97] *Id.*
[98] *Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1381 (5th Cir. 1991) (citing *Haslip*, 499 U.S. at 18); *see also Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 315 (Bankr. S.D. Tex. 2007).
[99] 934 F.2d at 1382 (quoting *Day v. Woodworth*, 54 U.S. 363, 371 (1852)).
[100] *Eichenseer*, 934 F.2d at 1381 (citing *Haslip*, 499 U.S. at 18 (1991)); *see also In re Sanchez*, 372 B.R. at 315.

al or potential harm inflicted on the plaintiff; and (3) the civil or criminal penalties that could be imposed for comparable misconduct.[101]   The Court will consider each factor in turn.

### i.   The degree of reprehensibility of Defendant's conduct

First, the Court finds Defendant's conduct exceedingly reprehensive.  As previously discussed, Defendant admits that his violation of the automatic stay was willful, but that it was not intentional.  This Court finds to the contrary.  Defendant first participated in Plaintiff's bankruptcy case on December 11, 2018.[102]   Defendant filed a Motion for Relief from Stay on December 12, 2018,[103] and this Court specifically resolved that Motion in the Stay Modification Order.[104] Defendant was well aware of the automatic stay yet still chose to file a Motion to Enforce in the State District Court in violation thereof.  More reprehensible still is Defendant's testimony that convinces this Court that the Motion to Enforce was retaliatory.[105]   That retaliation was in arrogant defiance of this Court's Stay Modification Order.  As stated by the Supreme Court in *Gore*, "infliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty."[106] Defendant committed multiple affirmative acts violating the automatic stay (i.e. the Motion to Enforce and the sale of the Property), all targeting Plaintiff while she was in bankruptcy and thus, warrant substantial penalty.

---

[101] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996); *see also Lincoln v. Case*, 340 F.3d 283, 292 (5th Cir. 2003).
[102] Bankr. ECF No. 20.
[103] Bank. ECF No. 23.
[104] Bankr. ECF No. 33.
[105] January 19, 2021 Trial at 9:25:10–9:26:10, 9:26:45–9:27:45, 9:28:15–9:29:40.  Defendant testified that he understood from Plaintiff's filing her Motion for New Trial that she was attempting to relitigate the property division awarded in the Final Decree because she believed it violated her bankruptcy case.  Defendant answered affirmatively when his counsel asked whether he felt he needed to "take action" because Plaintiff had "re-entered the fray" by filing the Motion in State District Court.  Defendant also testified that he failed to consider the automatic stay and need to seek pre-clearance.
[106] 517 U.S. 576.

### ii. The ratio of punitive damages to the actual or potential harm inflicted on Plaintiff

Second, the 10:1 punitive damages to actual damages ratio is justified here.  This factor assesses "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred."[107] The Supreme Court has said that "there are no rigid benchmarks that a punitive damages award may not surpass" and has consistently refused to set a bright-line ratio.[108]   However, it said, "[o]ur jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."[109]   Nonetheless, greater ratios "may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'"[110]

Here, Plaintiff's reliance on the charity of others, combined with her bankruptcy case, are evidence of Plaintiff's severe financial vulnerability, which was exacerbated by Defendant's willful and intentional violation of the automatic stay.  Moreover, because Plaintiff needed to rely on charity, the actual damages amount is difficult to ascertain and results in minimal actual damages.  That, in conjunction with Defendant's reprehensible conduct justifies a greater punitive damages award.

Additionally, both the Supreme Court and the Fifth Circuit have stated that in addition to the actual harm caused, the potential harm to future similarly situated victims should be consid-

---

[107] *Id.* at 581.
[108] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).
[109] *Id.*
[110] *Id.* (citing *Gore*, 517 U.S. at 582).

ered.[111]    In *TXO*, a plurality of the Supreme Court approved a punitive award in the amount of

$10 million in comparison to compensatory damages of $19,000.[112]    While the punitive damages

were 526 times the compensatory damages, the Court considered the *potential* harm defendant's

conduct *could have* caused and assessed it to be fifty times that which was awarded.[113]    There-

fore, the punitive damages award was actually only approximately 10 times the amount of poten-

tial damages.[114]    The punitive damages award was upheld.[115]    In *Jones*, a district court in the

Fifth Circuit found a 10:1 ratio appropriate where a large corporate defendant was sanctioned

three times previously for the same conduct and continued violate the automatic stay.[116]

This Court has already warned parties appearing before it that "flagrant and willful viola-

tions of the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules will not be en-

dured by this Court."[117]    Violations of the automatic stay are dealt with swiftly.[118]    The automatic

stay fundamentally protects both debtors and creditors.[119]    It halts collection efforts, harassment,

and foreclosure proceedings against a debtor, providing the debtor a breathing spell and relieving

the debtor from the financial pressures that drove the debtor into bankruptcy.[120]    It protects credi-

tors by preventing a run on the debtor's estate and ensuring an orderly liquidation procedure that

---

[111] *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 460 (1993); *Watson v. Johnson Mobile Homes, et al.*, 284 F.3d 568, 573 (5th Cir. 2002) (citing *Gore*, 517 U.S. at 582)).

[112] *See TXO Prod. Corp.*, 509 U.S. 443 (1993).

[113] *Id.* at 472 (Kennedy, J., Concurring) (emphasis added) ("[T]oday we decide that a 10-to-1 ratio between punitive damages and *the potential harm of petitioner's conduct* passes muster – calculating that potential harm, very generously, to be more than *50* times the $19,000 in actual damages that respondents suffered.") (emphasis in original).

[114] *Id.* at 453, 459–61, 472.  *But see Haslip*, 499 U.S. at 23–24 (approving a ratio of 4:1, noting that such damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety").

[115] *TXO Prod. Corp.*, 509 U.S. at 472.

[116] *Jones v. Wells Fargo Home Mortg. Inc.*, 489 B.R. 645, 655 (E.D. La. 2013).

[117] *Wright v. Csabi (In re Wright)*, 578 B.R. 570, 590 (Bankr. S.D. Tex. 2017).

[118] *Id.* at 576 ("Let it be clear to all that appear before this Court that flagrant violations of the Code and the aforementioned Rules and Procedures will not be tolerated and such violations will be dealt with swiftly by this Court."); *see also In re Garza*, B.R. at 829–31 (awarding actual damages plus punitive damages to the plaintiff for the defendant's willful violation of the automatic stay).

[119] *St Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540 (5th Cir. 2009) (citing H.R. REP. NO. 595 (1977); S. REP. NO. 989 (1978)).

[120] *Id.*

treats creditors equally.[121]   Defendant's arrogant defiance of the Stay Modification Order in this case destroyed those protections, making a bad situation worse.   This entire adversary proceeding would have been avoided had Defendant sought the pre-clearance required of him.   Because the automatic stay applies in every bankruptcy case, this scenario has the potential to repeat infinitely.   Willful, intentional, arrogant violations must be dealt with swiftly and sufficiently to deter future harm to debtors and creditors alike.[122]   Accordingly, the 10:1 ratio is reasonable to deter reprehensible conduct.

Lastly, the Fifth Circuit holds that the net wealth of a defendant may be considered in determining the reasonableness of a punitive damages award.[123]   In *Eichenseer*, the court found that based on the net wealth of the defendant corporation, a punitive damages award equal to that of the plaintiff's actual damages would not have the deterrent effect intended.[124]   The defendant's wealth, in part, justified a 50:1 ratio.[125]   Here, Defendant is and has been employed and there is no certainty as to if or when he may be furloughed.   He testified that he is making 60% of the salary he was making before but did not give the Court any indication as to the amount of his salary.   Without that figure, all this Court can assess are those assets of Defendant reflected in the record.[126]

Defendant received $44,970.94 in net proceeds from his sale of the Property in violation of the Stay Modification Order[127] and he was awarded another property, the home where Plain-

---

[121] *Id.*
[122] *See Burrell v. Auto-Pak-USA Inc. (In re Burrell)*, 2011 Bankr. LEXIS 5078, at *11 (Bankr. S.D. Tex. Dec. 20, 2011) (finding punitive damages reasonable and justified in order to deter defendant and other creditors from acting similarly in the future).
[123] *Eichenseer*, 934 F.2d at 1383.
[124] *Id.* at 1383–84.
[125] *Id.* at 1380, 1383–84.
[126] *Woods-Drake v. Lundy*, 667 F.2d 1198, 1203 n.9 (5th Cir. 1982) ("It is defendant, and not plaintiff, who must carry the burden of introducing evidence of net worth if defendant wishes these facts to be considered in awarding punitive damages.").
[127] Plaintiff's Trial Exhibit P36, at Bates 198–244; ECF No. 41.

tiff formerly resided with Defendant and their children, in the Final Decree.[128]   Defendant attempted to mitigate any damages award by testifying that he accrued a significant amount of attorneys' fees, upwards of $30,000, throughout this litigation.[129]   The Court finds no mitigation there.   This adversary proceeding is a direct result of Defendant's intentional conduct in arrogant defiance of the Stay Modification Order.   Any attorneys' fees paid or currently owed are self-inflicted.

### iii.  The penalties that could be imposed based on statute or comparable cases

Third, the Court may look to the controlling statute and other similar cases to determine whether the punitive damages award is reasonable.[130]   Section 362(k)(1) doesn't provide for criminal sanctions for willful violations of the automatic stay, nor does it put a statutory limit on the amount of punitive damages that may be awarded.   In assessing comparable cases involving willful violations of the automatic stay, this Court finds that many cases award punitive damages pursuant to a 1:1 ratio or less.[131]   However, the actual damages in those cases tend to be more significant than the actual damages in this case.[132]

For example, in *In re Burrell*, defendant willfully and egregiously violated the automatic stay by refusing to turnover debtor's vehicle resulting in $7,181.60 in actual damages, excluding attorney's fees, and an award of the same in punitive damages.[133]   In *In re Terry*, defendant willfully and egregiously violated the automatic stay by taking possession of debtor's personal prop-

---

[128] Defendant's Trial Exhibit D3, at Bates 31.

[129] *See supra* note 45 and accompanying text.

[130] *Campbell*, 538 U.S. at 428 (looking at comparable cases for guidance and acknowledging that the Supreme Court has sometimes looked to other penalties that may be statutorily assessed, such as criminal penalties).

[131] *See, e.g., Wilson v. Arbors of Cent. Park ICG, LLC (In re Wilson)*, 610 B.R. 255, 281 (Bankr. N.D. Tex. 2019) (awarding approximately $12,000 in compensatory damages and $10,000 in punitive damages); *In re Terry*, 2019 Bankr. LEXIS 3890, at *44 (Bankr. N.D. Tex. Dec. 23, 2019) (awarding approximately $7,500 in compensatory damages and $7,5000 in punitive damages); *In re Burrell*, 2011 Bankr. LEXIS 5078, at *10 (awarding $7,181.60 in compensatory damages and $7,181.60 in punitive damages).

[132] *See* cases cited *supra* note 130.

[133] 2011 Bankr. LEXIS 5078, at *1–5.

erty and refusing to return it, amounting to $7,416.19 in actual damages and $7,500 in punitive damages.[134]  In *In re Wilson*, defendant committed a willful and egregious violation of the automatic stay when it commenced and prosecuted an eviction action against debtors, causing approximately $12,000 dollars in actual damages and warranting $10,000 in punitive damages.[135]

The 1:1 or less ratios in those cases are justified based on the amount of actual damages. As the Supreme Court stated, when actual damages caused by the egregious act are small, a greater ratio may be warranted and where the actual damages are substantial, a lesser ratio may "reach the outermost limit of the due process guarantee."[136]  The case at bar is most similar to *In re Wilson* in that Plaintiff was dispossessed of her home because of Defendant's defiance of the automatic stay.[137]  The total damages award in that case was approximately $22,000.[138]  While the resulting harm was  similar in both cases, the actual damages proven here are much less than those in *In re Wilson*.  The higher ratio in this case puts the total damages award, $23,100, on par with that awarded in *In re Wilson*.

This Court also looks to cases where actual damages awards were comparable.  In *In re Lara*, defendant willfully and egregiously violated the automatic stay by continuing to demand payment from debtors after they filed bankruptcy.[139]  The court awarded $500 in actual damages and $24,000 in punitive damages to the plaintiffs—a 48:1 ratio.[140]  In *In re Bruner-Halteman*, defendant garnished debtor's wages 37 times in willful violation of the automatic stay.[141]  The court awarded $8,395 in actual damages and $74,000 in punitive damages, nearly nine times the

---

[134] 2019 Bankr. LEXIS 3890, at *31–35, *44.
[135] 610 B.R. at 281.
[136] *Campbell*, 538 U.S. at 425.
[137] *See* 610 B.R. at 281.
[138] *Id.*
[139] 569 B.R. 231 (Bankr. N.D. Tex. 2017)
[140] *Id.* at 237.  The court additionally awarded $7,480.00 in attorney's fees to a legal aid organization.
[141] *Bruner-Halteman v. Educ. Credit Mgmt. Corp. (In re Bruner-Halteman)*, 2016 Bankr. LEXIS 1130, at *1 (Bankr. N.D. Tex. Apr. 8, 2016).

actual damages.[142]   Lastly, in *In re* Garza, this Court awarded $1,000 in actual damages and $6,000 in punitive damages after the defendant repossessed a debtor's vehicle in violation of the automatic stay—a 6:1 ratio.[143]   Based on this Court's review of comparable cases, the Court finds a punitive damages assessment of $21,000 to be reasonable and within the constitutional bounds of due process.

### 2.   Whether Defendant should be held in civil contempt pursuant to § 105(a)

Under § 105(a), courts have the power to hold parties in civil contempt for violations of the automatic stay and other court orders.[144]   As observed by the Fifth Circuit, "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."[145]   But civil contempt is a "severe remedy" and basic fairness requires that those who must obey a court order know what the court requires and the consequences for failing to obey.[146]

As held by the Supreme Court in *Taggart*, the standard for determining whether a party is in civil contempt is an objective one.[147]   In the bankruptcy context, a party may be held in contempt where "no fair ground of doubt" exists as to whether the party's conduct was lawful under the bankruptcy court's order.[148]   "A party's subjective belief that she was complying with an or-

---

[142] *Id.* at *28, *30–31. The actual damages award was for attorney's fees incurred before the court imposed an injunction on defendant to stop it from continuing to garnish debtor's wages.  The court said it would hold a separate trial to determine the amount of attorney's fees incurred post-injunction.

[143] *In re Garza*, 655 B.R. at 833.

[144] *In re Sanchez*, 372 B.R. at 316.

[145] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction.") (quoting *United States v. Mine Workers*, 330 U.S. 258, 303–04 (1947)).

[146] *Taggart*, 139 S. Ct. at 1802 (first citing *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885), then citing *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).

[147] 139 S. Ct. at 1804.

[148] *See id.* (deciding the standard in a case involving a violation of a bankruptcy court's discharge order).

der ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable."[149]  A party's subjective belief, however, may be considered in determining the appropriate sanction for civil contempt.[150]

Defendant admits to being in contempt of this Court's Stay Modification Order.[151]  Defendant testified that his contemptuous conduct was not intentional, and that he was mistaken about the implications of the automatic stay as modified by this Court.[152]  Defendant's mistake was objectively unreasonable.  The automatic stay is specific and definite; [153] it required Defendant to refrain from forcing Plaintiff to deed him the Property and then selling that Property.  The Stay Modification Order reinforced the requirement that Defendant refrain from those actions.[154]  Section 362 is clear, this Court's order was clear, and Defendant was a party to the actions regarding the automatic stay in Plaintiff's bankruptcy case.  This Court is hard pressed to find any objectively reasonable mistake.

However, this Court need not consider whatever subjective, good-faith belief Defendant claims he had because this Court has already assessed actual and punitive damages against Defendant to compensate Plaintiff for losses sustained and there is no continuing need to coerce Defendant into complying with the automatic stay.[155]  Any assessment of sanctions pursuant to a finding of civil contempt would be unfairly duplicative, bordering on punitive.[156]  Thus, while this Court holds Defendant in civil contempt, no sanctions will be assessed against Defendant.

---

[149] *Id.* at 1802.
[150] *Id.*
[151] January 19, 2021 Trial 9:23:40–9:24:43.  In closing arguments, Defendant's counsel reiterated Defendant's admission of contempt. 11:16:00–11:18:45.
[152] See part IV *supra*.
[153] *See West v. Peterson (In re Noram Res., Inc.)*, 2015 Bankr. LEXIS 3440, at *13 (Bankr. S.D. Tex. Oct. 9, 2015).
[154] *See* Bankr. ECF No. 33.
[155] *See Am. Airlines, Inc.*, 228 F.3d at 585.
[156] *See In re Noram Res., Inc.*, 2015 Bankr. LEXIS 3440, at *13 ("Civil contempt may only be employed in two situations: to coerce the defendant into compliance with a court order and/or to compensate the complainant for losses sustained.  It *may not* be punitive.  A punitive fine, no matter how nominal, maybe be considered criminal if the con-

## V.  Conclusion

For the reasons stated in this Memorandum Opinion, the Court finds that Plaintiff shall be awarded actual damages in the amount of $2,100 and punitive damages in the amount of $21,000 for a total award of $23,100 for Defendant's willful violation of the automatic stay under 11 U.S.C. § 362(k)(1), which shall accrue post-judgment interest from the date of the entry of this Court's judgment until paid.  The post-judgment interest rate that will be in effect on the date of the entry of the judgment will be .09 percent (0.09%) per annum.[157]  Plaintiff's claim for attorney's fees and pre-judgment interest is denied. Plaintiff's claims for recovery of post-petition transfers under 11 U.S.C. §§ 549 and 550 and claim for turnover of property under 11 U.S.C. § 542 were mooted by this Court's order retroactively annulling the automatic stay validating the Rendition and Final Decree of the State District Court and are therefore denied.  The Court further finds Defendant in civil contempt of this Court's Stay Modification Order but declines to issue any sanctions against Defendant.

A Judgement consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 02/03/2021.

Eduardo V. Rodriguez
United States Bankruptcy Judge

---

temnor has no subsequent opportunity to reduce or avoid the fine through compliance.  Criminal sanctions are not authorized under the contempt authority of § 105(a).") (citations omitted).

[157] *Post-Judgment Interest Rates,* United States District & Bankruptcy Court Southern District of Texas, http://www.txs.uscourts.gov/page/post-judgment-interest-rates (last visited February 3, 2021).